IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SYSTEMS RESEARCH AND          )
APPLICATIONS CORP.,           )
                              )
        Plaintiff,            )
                              )
        v.                    )   1:11cv1211 (JCC/IDD)
                              )
ROHDE & SCHWARZ FEDERAL       )
SYSTEMS, INC.,                )
                              )
        Defendant.            )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff
Systems Research and Applications Corporation's ("SRA")
Motion to Stay Arbitration [Dkt. 2] and Defendant Rohde &
Schwarz Federal Systems, Inc.'s ("RSFed") Motion to Dismiss
[Dkt. 9].  For the following reasons, the Court will deny
Plaintiff's Motion to Stay Arbitration and will grant
Defendant's Motion to Dismiss.

**I. Background**

A.    <u>Factual Background</u>

This case arises out of an arbitration commenced
by RSFed on September 13, 2011, concerning a contract
dispute with SRA.  SRA was the prime contractor for the
United States Agency for International Development

1

("USAID") under a contract (the "Prime Contract") which required it to provide telecommunications equipment to the Telecommunications Regulatory Authority ("TRA") of Lebanon. (Compl. [Dkt. 1] ¶ 4.)  On or about April 13, 2010, SRA executed a subcontract (the "Subcontract") with RSFed for the performance of a portion of the work under the Prime Contract.  (Compl. ¶ 6.)  The Prime Contract originally specified a period of performance of March 13, 2009 to March 12, 2010, but by contract modification was extended to March 12, 2011.  (Compl. ¶ 5.)  The Subcontract specified a period of performance of April 2, 2010 to March 12, 2011.  (Compl. ¶ 6.)

The Subcontract provided for payment to RSFed of fixed prices "upon satisfactory completion and/or delivery and SRA's acceptance" of deliverables, which were also termed "milestones."  (Compl. ¶ 7.)  The Subcontract also stated that where the client is the United States government, or any state or local government, SRA's acceptance would occur upon successful completion and acceptance by the client.  (*Id.*)  The total value of the milestones for Phase I of the Subcontract (the only phase that was implemented) was $3,443,900.  (Compl. ¶ 8.)  This amount is referred to in the Subcontract as the "Funded Value."  (*Id.*)

The Subcontract also included a paragraph entitled "Excusable Delays," which provided that RSFed would not be liable for nondelivery or delay caused by certain circumstances beyond its control. (Compl. ¶ 10.) RSFed agreed to make, and the buyer agreed to accept, deliveries whenever the cause of delay ceased to exist so long as the Prime Contract and Subcontract periods of performance were active, and USAID and TRA agreed to accept the deliverables. (*Id.*) The Subcontract provided that in the event SRA issued a formal notice terminating the Subcontract, SRA would pay for completed deliverables on a sliding scale upon acceptance by the client. (Compl. ¶ 11.)

The parties commenced performance of the Subcontract as scheduled on April 2, 2010, but political problems in Lebanon and other delays prevented the timely completion of the first milestone. (Compl. ¶ 12.) As a result of that delay, RSFed was able to complete and deliver only two of fifteen milestones prior to the end of the period of performance. (*Id.*) Both milestones were accepted by USAID, and thus by SRA, on March 11, 2011. (*Id.*)

SRA requested that USAID extend the period of performance to allow the parties to complete the entire

scope of work contained in the Prime Contract, but USAID refused, thereby excusing SRA from further obligation to perform the remaining deliverables. (Compl. ¶ 13.)

On March 31, 2011, RSFed submitted an invoice to SRA in the amount of $232,628, the value of the two milestones it completed. (Compl. ¶ 14.) SRA paid this invoice in full. (*Id.*) By letter dated May 18, 2011, RSFed submitted a second invoice to SRA ("Invoice No. 399"), which billed SRA for the remaining balance of the Funded Value of the Subcontract -- $3,211,362. (Compl. ¶ 16.) RSFed did not complete or deliver any of the milestones included on Invoice No. 399. (*Id.*) SRA rejected the invoice by letter dated June 13, 2011. (Compl. ¶ 17.) In the letter, SRA declared the request for payment to be a "Government Contract Dispute" as defined in Article 2.4.2 of the Subcontract, and requested that should RSFed wish to pursue the matter, it submit a claim to SRA in accordance with the provisions of Federal Acquisition Regulation ("FAR") 52.233-1 -- the Government Contract Disputes clause incorporated into the Subcontract. (*Id.*) RSFed has not done so. (Compl. ¶ 18.)

On or about September 13, 2011, RSFed commenced an arbitration proceeding against SRA, seeking an award in the amount of $3,197,430. (Compl. ¶ 19.) The matter

remains pending before the International Centre for Dispute Resolution, a division of the American Arbitration Association.  (*Id.*)

SRA denies that there is an agreement to arbitrate the instant dispute and demands that the Court stay the pending arbitration until or unless: (1) RSFed submits, and the Government decides, a claim in accordance with FAR 52.233-1 and the Contract Disputes Act of 1986, 41 U.S.C. § 601, *et seq.*, or (2) the dispute is otherwise converted into an "Agreement Dispute" in accordance with the terms of the Subcontract.  (Compl. ¶ 20.)  The Disputes clause of the Subcontract, Article 2.4, gives SRA the right to designate a claim a "Government Contract Dispute," and provides that any such dispute "shall be governed by the Prime Contract's 'Disputes' clause." (Compl. ¶ 21 (quoting Compl. Ex. C ("Subcontract") art. 2.4.2.1).)  Article 2.4.2 of the Subcontract provides that if RSFed desires to pursue a "Government Contract Dispute," RSFed must "timely submit a written request to SRA setting forth the legal basis of the claim, along with any required certifications." (*Id.* (quoting Subcontract art. 2.4.2.1).)  Only "Agreement Disputes" are subject to arbitration, which are defined as follows: "any dispute between the Subcontractor and SRA where the resolution of the dispute does not depend upon a

ruling or interpretation by the Government or its courts and is not subject to the Disputes clause, FAR 52.233-1." (Compl. ¶ 22; *see also* Subcontract art. 2.4.3.)

According to SRA, the instant dispute is a "Government Contract Dispute," not an "Agreement Dispute," and hence is not subject to arbitration. (Compl. ¶ 23.) In support of its position, SRA points out that it has designated the dispute a Government Contract Dispute and contends that resolution of the dispute depends on rulings by USAID pursuant to the provisions of the Subcontract discussed above. (*Id.*) SRA seeks a declaration that the instant dispute is a "Government Contract Dispute" and not arbitrable until or unless RSFed complies with the terms of the Disputes clause in the Subcontract. SRA also requests that the Court stay the pending arbitration and compel RSFed to comply with the Subcontract Disputes clause.

B.   Procedural Background

On November 4, 2011, SRA filed its Complaint to Stay Arbitration [Dkt. 1], in which it seeks declaratory and injunctive relief, and a Motion to Stay Arbitration [Dkt. 2]. RSFed filed a Motion to Dismiss the Complaint on November 22, 2011. [Dkt. 9.] SRA filed an opposition [Dkt. 14] on December 5, 2011, to which RSFed responded [Dkts. 15, 16] on December 8, 2011. The Court heard oral

argument on December 16, 2011, and requested supplemental
briefing, which RSFed submitted on December 26, 2011 [Dkt.
19] and SRA submitted on December 27, 2011 [Dkt. 20].
SRA's Motion to Stay Arbitration and RSFed's Motion to
Dismiss are before the Court.

## II.   Standard of Review

### A.   Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a claim may be
dismissed for lack of subject matter jurisdiction.  Fed. R.
Civ. P. 12(b)(1).  Defendants may attack subject matter
jurisdiction in one of two ways.  First, defendants may
contend that the complaint fails to allege facts upon which
subject matter jurisdiction may be based.  *See Adams v.
Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v.
Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D.
Va. 2002).  In such instances, all facts alleged in the
complaint are presumed to be true.  *Adams*, 697 F.2d at
1219; *Virginia v. United States*, 926 F. Supp. 537, 540
(E.D. Va. 1995).

Alternatively, defendants may argue that the
jurisdictional facts alleged in the complaint are untrue.
*Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780.  In
that situation, "the Court may 'look beyond the
jurisdictional allegations of the complaint and view

whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Velasco v. Gov't of Indonesia*, 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment") (citations omitted).

In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

B.   Failure to State a Claim

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A 12(b)(6) motion tests the legal sufficiency of the complaint.

*Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing a complaint on a 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the

9

elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.  Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1949-50.

### III. Analysis

RSFed raises two arguments why the Court should dismiss this case:  (1) that SRA has failed to establish subject matter jurisdiction; and (2) that the arbitrability of the instant dispute should be determined by the arbitration panel.  The Court will address each argument in turn.

#### A.   Subject Matter Jurisdiction

First, RSFed argues that SRA has failed to establish that this Court has subject matter jurisdiction. RSFed points out that SRA cites Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, as a basis for subject matter jurisdiction.  Section 3 of the FAA gives federal courts the power to stay litigation in favor of arbitration, 9 U.S.C. § 3, while Section 4 enables parties to move to compel arbitration, *id.* § 4.  RSFed asserts that the Court is without subject matter

jurisdiction because here, SRA seeks to do the opposite --
that is, stay arbitration. Importantly, RSFed does not
challenge the jurisdictional facts alleged by SRA in
support of diversity jurisdiction. The parties are
citizens of different states and the amount in controversy
exceeds $75,000. (*See* Compl. ¶¶ 1-3.) Rather, RSFed
argues that SRA fails to establish the Court's authority to
determine arbitrability here.

RSFed is correct that the FAA does not give this
Court subject matter jurisdiction, as the FAA does not
provide federal courts with an independent jurisdictional
basis. *See Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S.
576, 581-82 (2008) ("As for jurisdiction over controversies
touching arbitration, the [FAA] does nothing, being
something of an anomaly in the field of federal-court
jurisdiction in bestowing no federal jurisdiction but
rather requiring an independent jurisdictional basis.")
(internal quotation marks omitted). However, diversity
jurisdiction, which RSFed does not challenge, provides an
independent jurisdictional basis here. And numerous courts
have either expressly or implicitly concluded that federal
courts possess the power to stay arbitration proceedings.
*See, e.g.*, *Va. Carolina Tools, Inc. v. Int'l Tool Supply,
Inc.*, 984 F.2d 113, 116-19 (4th Cir. 1993) (district court

properly stayed arbitration in diversity case); *AT&T Mobility, LLC v. Fisher*, No. DKC 11-2245, 2011 WL 5169349, at *1 (D. Md. Oct. 28, 2011) (granting injunction prohibiting defendant from seeking relief in arbitration pursuant to complaint asserting both federal question and diversity jurisdiction); *DECO, Inc. v. United Gov't Sec. Officers of Am.*, No. 2:04cv735, 2005 WL 2298166, at *5 (E.D. Va. Sept. 21, 2005) (stating that a motion to stay arbitration "is proper to challenge arbitrability when arbitration proceedings have commenced").  Thus, the Court finds that SRA has stated a sufficient basis for subject matter jurisdiction.

    B.   <u>Arbitrability</u>

        RSFed next argues that arbitrability of the instant dispute should be decided not by this Court but by the arbitration panel.  "The question of arbitrability –– whether a[n] . . . agreement creates a duty for the parties to arbitrate the particular grievance –– is undeniably an issue for judicial determination."  *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  While the general rule is that the question of arbitrability is for the court to decide as a matter of contract interpretation, parties may provide by contract for arbitration even of arbitrability issues.  *Va. Carolina*

12

*Tools*, 984 F.2d at 117.   An intention to do so, however, is sufficiently at odds with normal practice that the general presumption in favor of arbitration "is not applied as a rule of contract interpretation to resolve questions of the arbitrability of arbitrability issues themselves."   *Id.* "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability) courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."[1]   *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).   The qualification to this general rule is that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."   *Id.* (internal quotation marks omitted).

According to RSFed, the parties have agreed to arbitrate the question of arbitrability, and that fact is "clear and unmistakable."   (Defendant's Memorandum in Support of Motion to Dismiss [Dkt. 10] ("Def.'s Mem.") at

---

[1] There is no general choice-of-law provision in the Subcontract.   SRA contends that Delaware law applies, but the Court rejects this argument for reasons discussed below.   Applying Virginia choice-of-law principles, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), questions concerning the validity, effect, and interpretation of a contract are resolved according to the principle of *lex loci contractus*, *i.e.*, the law of the state where the contract was made controls.   *Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 426 (Va. 1970) (quoting *CIT Corp. v. Guy*, 170 Va. 16, 22 (Va. 1938)).   Here, the contract was made in Virginia, and thus Virginia law applies.

7.) RSFed notes that Article 2.4.3 of the Subcontract

provides as follows:

> Any dispute designated by SRA as an
> Agreement Dispute and any dispute
> originally designated a Government
> Contract Dispute but later converted to
> an Agreement Dispute shall be submitted
> to binding arbitration. . . .
> Arbitration may be conducted in
> accordance with the standard rules of
> the AAA Commercial Arbitration except
> Arbitrators may not make any award not
> strictly in conformance with this
> agreement.

(*Id.*) RSFed proceeds to point out that Rule R-7 of the AAA

Commercial Arbitration Rules provides that "[t]he

arbitrator shall have the power to rule on his or her own

jurisdiction, including any objections with respect to the

existence, scope, or validity of the arbitration

agreement." AAA, Commercial Arbitration Rules R-7(a)

(2009), *available at* http://www.adr.org/sp.asp?id=22440.

The rule adopted by a majority of federal courts

is that the incorporation of AAA Rules into a contract

"clearly and unmistakably vests the arbitrator, and not the

district court, with authority to decide which issues are

subject to arbitration." *See Bishop v. Gosiger, Inc.*, 692

F. Supp. 2d 762, 769 (E.D. Mich. 2010) (quoting *Bollinger

Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*,

No. 08-4578, 2009 WL 86704, at *5 (E.D. La. Jan. 12, 2009))

14

(collecting cases).[2]  The Fourth Circuit has not yet ruled
on this issue.[3]

　　　　SRA attempts to distinguish the cases cited by
RSFed, which apply the majority federal rule on the grounds
that -- with one exception -- they involved so-called
"broad form" or "all disputes" arbitration clauses.  (Opp.
[Dkt. 14] at 5.)  In arbitration clauses of this variety,
the parties agree to arbitrate "any controversy or claim .
. . arising out of or relating to" the contract or
agreement between the parties.  *Terminix Int'l Co., LP v.*

---

[2] *See, e.g., Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, No. 10-
55719, 2011 WL 6254979, at *2 (9th Cir. Dec. 15, 2011) (unpublished);
*Fallo v. High-Tech Inst.*, 559 F.3d 874, 880 (8th Cir. 2009); *Qualcomm
Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix
Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th
Cir. 2005); *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205,
210-11 (2d Cir. 2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469,
473-74 (1st Cir. 1989) (dealing with similar terms in the International
Chamber of Commerce Rules of Arbitration, and concluding that such
rules clearly and unmistakably allow the arbitrator to determine his or
her jurisdiction); *Citifinancial, Inc. v. Newton*, 359 F. Supp. 2d 545,
549, 552 (S.D. Miss. 2005); *Bayer CropScience, Inc. v. Limagrain
Genetics Corp., Inc.*, No. 04 C 5829, 2004 WL 2931284, at *4 (N.D. Ill.
Dec. 9, 2004); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso,
P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 684-85 (S.D. Fla. 2001).

[3] Judge Davis of the District of Maryland reached a conclusion contrary
to the majority federal rule in two cases.  *See Diesselhorst v. Munsey
Bldg., LLLP*, No. Civ. AMD 04-3302, 2005 WL 327532, at *4 (D. Md. Feb.
9, 2005) ("Simply by agreeing that any matters sent to arbitration
would be governed by the AAA Rules, [the parties] did not clearly and
unmistakably demonstrate an intent to have an arbitrator determine the
question of arbitrability."); *Martek Biosciences Corp. v. Zuccaro*, No.
Civ. AMD 04-3349, 2004 WL 2980741, at *3 (D. Md. Dec. 23, 2004)
(holding that the parties' agreement to arbitrate in accordance with
Judicial Arbitration and Mediation Services rules, which provide the
arbitrator with jurisdiction over the issue of arbitrability, did not
express a clear and unmistakable intent to have an arbitrator decide
the question of arbitrability).  However, the great weight of authority
since these cases were decided has held that incorporation of the AAA
rules evidences a clear and unmistakable intent that arbitrability is
for the arbitrator to decide.

*Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1329 & n.1 (11th
Cir. 2005). Here, by contrast, only Agreement Disputes are
arbitrable, while Government Contract Disputes are subject
to non-arbitrable dispute resolution. SRA argues that
where there is no "all disputes" clause, courts decide
arbitrability notwithstanding incorporation of the AAA
Rules.

SRA cites *Duthie v. Matria Healthcare, Inc.*, 535
F. Supp. 2d 909 (N.D. Ill. 2008), *aff'd* 540 F.3d 533 (7th
Cir. 2008), in support of its argument. In *Duthie*, the
court held that there was not clear and unmistakable
evidence that the parties agreed that questions of
arbitrability were for the arbitrator to decide where the
arbitration clause provided for arbitrability of only four
claims. *Id.* at 916. The court recognized that in deciding
which disputes the parties agreed should be arbitrated, a
court looks to state law principles of contract, and,
citing a provision of the contract, found that Delaware law
controlled. *Id.* at 917. The court noted the Delaware
Supreme Court's holding that absent an "all disputes"
clause, there is missing the clear and unmistakable
evidence necessary to conclude that the parties agreed that
the question of arbitrability was for the arbitrators. *Id.*

at 916 (citing *James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76, 80-81 (Del. 2006)).

The Eastern District of Louisiana reached a
contrary conclusion in *Bollinger Shipyards Lockport LLC v.
Northrop Grumman Ship Sys., Inc.*, No. 08-4578, 2009 WL
86704 (E.D. La. Jan. 12, 2009).  There, the defendant
likewise attempted to distinguish cases applying the
majority federal rule on the grounds that they involved
broad arbitration clauses, while the arbitration clause at
issue covered only a narrow subset of disputes.  *Id.* at *5.
The court rejected the argument, noting that "pointing out
a factual difference is not the same as establishing that
the difference should have legal significance."  *Id.* at *6.
The court explained that the parties' agreement to a narrow
arbitration clause regarding what types of disputes were
arbitrable is distinct from the question of whether they
"intend[ed] for the arbitrator to decide whether a
particular dispute falls within the ambit of the disputes
covered by the clause."  *Id.; see also Turi v. Main St.
Adoption Servs., LLP*, 633 F.3d 496, 508 (6th Cir. 2011)
(reasoning that the authority to determine arbitrability
"can be delegated irrespective of the breadth (or
narrowness) of the arbitration clause" and hence "this
power does not disappear simply because the parties have

17

made that delegation in the context of a narrow arbitration clause").

SRA argues that Delaware law governs here and that the Court should, like *Duthie*, follow the Delaware Supreme Court's holding in *James & Jackson.* (Opp. at 8.) The Court rejects this argument.  SRA attempts to invoke Delaware law by citing Article 2.4.3 of the Subcontract.[4] That clause, however, applies to Agreement Disputes, and provides that in the case of arbitration, "*arbitrators shall apply the substantive law* [of] Delaware, without regard to its Conflict of Laws provisions." (Subcontract art. 2.4.3 (emphasis added).)  At the same time, SRA argues that the instant dispute is not an Agreement Dispute, but rather a Government Contracts Dispute.  Government Contract Disputes are in turn governed by different provisions in the Disputes clause of the Subcontract.  The Court fails to see how a choice-of-law provision requiring arbitrators to apply substantive Delaware law in a clause that SRA argues is inapplicable dictates that this Court must apply Delaware law in deciding who is to determine arbitrability. Rather, as discussed in footnote 1, *supra*, the Court finds

---

[4] SRA mistakenly references "Article 4.2.3" in its brief.

18

that Virginia law applies here, as Virginia is the place where the contract was made.[5]

The Court agrees with the reasoning in *Bollinger*,[6] and concludes that delegation to the arbitrator of the power to determine arbitrability does not disappear merely because the arbitration clause in question is narrow.  SRA also notes, however, that the arbitration clause contains permissive language with respect to the AAA Rules, and provides that "[a]rbitration *may be* conducted in accordance with the standard rules of the AAA Commercial Arbitration except Arbitrators may not make any award not strictly in conformance with this Agreement." (Subcontract art. 2.4.3 (emphasis added).)  By contrast, the cases cited by RSFed applying the majority federal rule appear to have dealt

---

[5] It does not appear that Virginia courts have ruled on who should decide the question of arbitrability where a narrow arbitration clause incorporates the AAA rules.  In *Kay Jennings Family Limited Partnership v. DAMN, LLC*, 71 Va. Cir. 348, 2006 WL 2578366 (Va. Cir. Ct. Aug. 9, 2006), the court recognized the majority federal rule and noted its consistency with Virginia law, where parties can contract regarding the arbitrator's jurisdiction.  *Id.* at *2 (citing *Waterfront Marine Constr., Inc. v. N. End 49ers Sandbridge Bulkhead Grps. A, B & C*, 251 Va. 417, 425 (Va. 1996)).  The court distinguished *James & Jackson*, and held that incorporation of the AAA rules was clear and unmistakable evidence that the arbitrator was to decide arbitrability where the parties agreed to an arbitration provision tied to a specific controversy.  *Id.* at *3.
[6] The Court is not persuaded by SRA's attempt to distinguish *Bollinger*. SRA asserts that "the arbitration clause there applied, ultimately, to all disputes." (Opp. at 5 n.2.)  This assertion is contradicted by the *Bollinger* court's observation that "[i]n the present case . . . the arbitration clause covers only a narrow subset of disputes . . ." 2009 WL 86704, at *5.

with arbitration clauses that contained mandatory language.[7]

This, in isolation, might persuade the Court that it is

less than clear and unmistakable that the parties intended

for the arbitrator to determine arbitrability.[8]  In

addition, however, there is a clause, which immediately

follows the arbitration clause and reads as follows:

"[e]xcept as otherwise specifically provided in this

provision, neither party shall institute any action or

proceeding against the other party in any court of law or

equity with respect to *any dispute which is or could be the*

---

[7] *See, e.g., Fallo*, 559 F.3d at 877 ("The arbitration provision in the enrollment agreement states that disputes arising out of the enrollment agreement '*shall be* settled by arbitration in accordance with the Commercial Rules of the [AAA].'") (emphasis added); *Terminix Int'l*, 432 F.3d at 1332 (all three arbitration clauses at issue provided that "arbitration *shall be* conducted in accordance with the Commercial Arbitration Rules then in force of the [AAA]'"); *Qualcomm*, 466 F.3d at 1368 (arbitration clause "*dictates* that any such dispute '*shall be* settled by arbitration in accordance with the arbitration rules of the [AAA]'") (emphasis added); *Contec Corp*, 398 F.3d at 208 (arbitration clause read: "[i]n the event the parties are unable to arrive at a resolution, such controversy *shall be* determined by arbitration . . . in accordance with the Commercial Arbitration Rules of the [AAA]") (emphasis added); *Citifinancial*, 359 F. Supp. 2d at 549 (arbitration clause provided that "any Claim . . . *shall be* resolved by binding arbitration *in accordance with* . . . the Expedited procedures of the Commercial Arbitration Rules of the [AAA]") (first emphasis added); *Bayer CropScience*, 2004 WL 2931284, at *4 (arbitration clause provided that "[t]he arbitration *shall be* conducted . . . in accordance with the prevailing commercial arbitration rules of the [AAA]") (emphasis added); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso*, 203 F.R.D. at 684 ("It is undisputed here that the relevant arbitration provisions of the Agreement *mandate* that any arbitration shall be conducted by the AAA under its auspices.") (emphasis added).
[8] RSFed points out that the arbitration is in fact proceeding under AAA Rules and that SRA has objected to the arbitrator's jurisdiction according to AAA Rule 7(c).  (Def.'s Mem. at 11.)  But what is relevant is whether the parties *agreed to* have arbitrators decide the question of arbitrability.  *See First Options of Chicago*, 514 U.S. at 946. ("[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue . . . .")

*subject of a claim or proceeding pursuant to this provision*." (Subcontract art. 2.4.4 (emphasis added).) RSFed argues that this provision constitutes a waiver in which the parties contractually agreed that they would not institute any action in court related to a dispute that is or could be subject to arbitration. (Def.'s Mem. at 12.) Even the *James & Jackson* case, on which SRA heavily relies, noted that in cases involving narrow arbitration clauses, "something other" than the incorporation of the AAA rules could establish that the parties intended to submit arbitrability questions to an arbitrator. 906 A.2d at 81. The waiver provision in the Subcontract constitutes "something other" than incorporation of the AAA rules, and, the Court concludes, evidences the parties' clear and unmistakable intent that arbitrability would be decided by the arbitrator.

SRA did not respond to this argument until it submitted supplemental briefing at the Court's request. SRA points out that the waiver provision is not contained in the arbitration clause, does not refer to "arbitration" by name, and "just as equally can and does refer to the 'claims' procedure set forth in the Government Contract Dispute section of [the] Disputes clause." (Pl.'s Supplemental Br. [Dkt. 20] at 6 n.1.) The Court does not

see how this argument helps SRA.  Rather, SRA recognizes
that the waiver provision can be read to apply here
irrespective of whether the instant dispute is a Government
Contract Dispute, as SRA claims, or an Agreement Dispute,
given that both types of dispute fall within the same
general provision, *i.e.*, the Disputes clause.

SRA argues that such a broad reading of the
waiver provision is obviously without merit.  (*Id.*)  In
Virginia, however, a party may generally "waive by contract
any right conferred by law or contract." *Gordonsville
Energy, LP v. Va. Elec. & Power Co.*, 257 Va. 344, 356 (Va.
1999).  Virginia courts have long "recognized that a party
may enter into an agreement in which he waives a
significant right." *Id.* at 355 (collecting cases).

SRA cites no authority in support of its argument
that it has not waived its right to bring this action, nor
does it raise any defense that might serve as a basis for
declaring the waiver provision unenforceable.  SRA likewise
offers no alternative interpretation of Article 2.4.4,
where it would not be barred from bringing this action.
Rather, SRA's preference seems to be to ignore this
provision.  In Virginia, however, "[c]ontract language will
not be treated as meaningless where it can be given a
reasonable meaning." *Condo. Servs., Inc. v. First Owners'*

22

*Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 572 (Va. 2011) (quoting *Ross v. Craw*, 231 Va. 206, 214 (Va. 1986)).

Moreover, SRA is the party that drafted the language at issue.  (Reply [Dkt. 16] at 4 n.2; Def.'s Supplemental Br. [Dkt. 19] at 16.)  If it is SRA's contention that the language in the waiver provision is ambiguous, that ambiguity must be construed against SRA as drafter under the principle of *contra proferentem*.  *See Martin & Martin, Inc. v. Bradley Enters., Inc.*, 256 Va. 288, 291 (Va. 1998) ("In the event of an ambiguity in a written contract, such ambiguity must be construed against the drafter of the agreement.") (citations omitted).

In sum, the Court concludes that the incorporation of the AAA Rules in the Subcontract's arbitration clause, and the waiver provision drafted by SRA which by its terms bars this action, together constitute clear and unmistakable evidence that the parties intended for the issue of arbitrability to be decided by the arbitrator.

## IV.   Conclusion

For these reasons, the Court will deny

Plaintiff's Motion to Stay Arbitration and will grant

Defendant's Motion to Dismiss.

An appropriate Order will issue.


|                          | /s/                                      |
|--------------------------|------------------------------------------|
| January 4, 2012          | James C. Cacheris                        |
| Alexandria, Virginia     | UNITED STATES DISTRICT COURT JUDGE       |